IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Willie James Hamlet, ) | C/A No. 0:12-2410-TMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Officer R. Honeycutt, *047386*; Warden Willie ) | |
| L. Eagleton; Director of SCDC William Byars, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

The plaintiff, Willie James Hamlet ("Hamlet"), a self-represented state prisoner, filed this action pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the defendants' motion for summary judgment. (ECF No. 27.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Hamlet was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 28.) Hamlet filed a response in opposition (ECF No. 43), and the defendants replied (ECF No. 44). Having carefully considered the parties' submissions and the applicable law, the court concludes that the defendants' motion should be granted.

**BACKGROUND**

Hamlet's Complaint raises claims regarding an incident that occurred on or around April 21, 2011 while he was housed at Evans Correctional Institution ("ECI"). According to Hamlet, he was getting out of bed, buttoning up his clothing, and moving toward his cell door to receive medication from the nurse when Officer Honeycutt sprayed him multiple times with chemical munitions through

the "food pass" opening in the cell. Hamlet alleges that both he and his roommate were contaminated by the chemical munitions, as well as his bedding and personal items, and that he was denied a shower until the following day. Hamlet also appears to assert that Warden Eagleton failed to protect Hamlet from this incident by not transferring him to a different South Carolina Department of Corrections ("SCDC") facility prior to the above-described incident. In addition, Hamlet appears to challenge the employees' application of SCDC policy regarding the use of chemical munitions and alleges that William Byars, as SCDC director, oversaw this policy and the employees.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."



Id. at 248.  Moreover, this court recognizes that while the determinations of credibility and the weighing of evidence are matters for the jury and not the court, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 249-50 (citations omitted).

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322.  Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Defendants' Motion for Summary Judgment**

**1.     Exhaustion of Administrative Remedies**

The defendants argue that Hamlet's Complaint should be dismissed because he has failed to exhaust his administrative remedies with regard to his claims.  In response to the defendants' motion, Hamlet alleges that the defendants prevented him from exhausting his administrative remedies by "intentionally remov[ing] the grievances (forms) from the Security Management Unit (SMU)." (Pl.'s Resp. Opp'n Mot. Summ. J., ECF No. 43 at 4.)  "[A]n administrative remedy is not considered



to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008); see also Stenhouse v. Hughes, C/A No. 8:04-23150-HMH-BHH, 2006 WL 752876, at *2 (D.S.C. 2006) ("[E]xhaustion may be achieved in situations where prison officials fail to timely advance the inmate's grievance or otherwise prevent him from seeking his administrative remedies.").

In support of their argument, the defendants provide affidavit testimony from Ann Hallman, the SCDC Inmate Grievance Branch Chief, who avers that Hamlet waited over four months to file a grievance with regard to the alleged incident in his Complaint. (Hallman Aff. ¶ 3, ECF No. 27-2 at 1.) Although she avers that Hamlet had access to grievance forms with which to timely file a grievance (id. ¶ 5, ECF No. 27-2 at 2), Hamlet disputes this assertion and provides multiple attachments to demonstrate that grievance forms were not available. (See, e.g., ECF Nos. 43-20, 43-26, 43-31, &43-32.) Accordingly, on this record, the defendants have not shown that they are entitled to summary judgment on this basis. See Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005) (holding that it is the defendants' burden to establish that a plaintiff failed to exhaust his administrative remedies).

### 2. Official Capacity Claims

To the extent that Hamlet is suing the defendants in their official capacities for monetary relief, they are entitled to summary judgment. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Sovereign immunity protects both the State itself and its agencies, divisions, departments, officials, and other "arms of the State." See Will v. Michigan



Dep't of State Police, 491 U.S. 58, 70 (1989); see also Regents of the Univ. of California v. Doe, 519 U.S. 425, 429 (1997) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities."). As arms of the state, the defendants, who are all SCDC employees, are entitled to sovereign immunity and cannot constitute "persons" under § 1983 in that capacity. See Will, 491 U.S. at 70-71. Although a State may waive sovereign immunity, Lapides v. Board of Regents, 535 U.S. 613 (2002), the State of South Carolina has specifically denied this waiver for suit in federal district court. See S.C. Code Ann. § 15-78-20(e). Accordingly, to the extent the defendants are sued in their official capacities, they are immune from suit. Will, 491 U.S. at 70-71; see also Quern v. Jordan, 440 U.S. 332, 343 (1979) (recognizing that Congress did not override the Eleventh Amendment when it created the remedy found in 42 U.S.C. § 1983 for civil rights violations).

    **3.    Eighth Amendment—Excessive Force/Medical Needs**

As summarized above, Hamlet alleges that Defendant Honeycutt used excessive force when he sprayed Hamlet with chemical munitions on April 21, 2011. The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To proceed with his excessive force claim under the Eighth Amendment, Hamlet must demonstrate: (1) objectively, the deprivation was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel



and unusual.' " Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson, 501 U.S. at 298-300).

The " 'core judicial inquiry' " in an excessive force claim under the Eighth Amendment is " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Wilkins v. Gaddy, 559 U.S. 34, 130 S. Ct. 1175, 1178 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, " '[w]hen prison officials maliciously and sadistically use force to cause harm,' . . . 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' " Wilkins, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 9).

When analyzing the subjective element of excessive force claims, courts must determine if the defendant showed "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. 312, 322 (1986). To that end, they should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Id. at 321. Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work



in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed.  Id.  The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline."  Id. at 322.

The United States Court of Appeals for the Fourth Circuit has addressed the use of chemical munitions in a prison setting.  See Williams v. Benjamin, 77 F.3d 756 (4th Cir. 1996); Bailey v. Turner, 736 F.2d 963, 969 (4th Cir. 1984).  In Bailey, the Fourth Circuit held that as long as the quantity of mace used is commensurate with the gravity of the occasion, its use does not violate the Constitution.  Specifically, the Bailey Court held that prison officials may use mace to compel the obedience of a recalcitrant prisoner.  Bailey, 736 F.2d at 969-70.  The Bailey Court found that the Eighth Amendment afforded prison officials the discretion to use mace on inmates to compel them to abide by prison rules, even if they did not pose an immediate physical threat.  Id.  Whether the use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used."  Id. at 969.  Furthermore, the Fourth Circuit has stated that "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate" and "because a limited use of mace constitutes a relatively mild response compared to other forms of force, the initial application of mace indicates a tempered response by the prison officials."  Williams, 77 F.3d at 763 (internal quotations marks & citation omitted).

In support of their summary judgment motion, the defendants have provided affidavit testimony from Defendant Richard Honeycutt, a Corrections Officer at ECI, and Amy Smith, the



Health Care Authority at ECI. (See generally Honeycutt Aff., ECF No. 27-3; Smith Aff., ECF No. 27-4.) Honeycutt avers that, on the date of the incident, he was escorting Nurse Amerson through the SMU to distribute medication when he opened Hamlet's cell and saw Hamlet masturbating. (Honeycutt Aff. ¶ 3, ECF No. 27-3 at 1-2.) As this behavior presented a health and security concern to Honeycutt and Nurse Amerson, Honeycutt attests that he gave Hamlet several directives to stop, but when Hamlet did not comply, Honeycutt administered one burst of Sabre Red Pepper Spray into Hamlet's cell. (Id.) Honeycutt avers that Hamlet continued to masturbate, and Honeycutt administered a second burst of pepper spray into Hamlet's cell. (Id.) Honeycutt also avers that after Hamlet's cell was secured, Hamlet was seen by medical staff and did not make any complaint of injuries or shortness of breath. (Id. at ¶¶ 4, 6, ECF No. 2.)

Hamlet disputes certain aspects of the defendants' version of events. Specifically, he alleges that he recalls "walking towards the food pass door to receive medicine" while "buttoning the lower half of his uniform." (Compl., ECF No. 1 at 14.) Following the first burst of chemical munitions, Hamlet concedes that he became frustrated and was "yelling and coughing profusely." (Id.) In response to the defendants' motion for summary judgment, Hamlet appears to argue that, as the charges of exhibitionism and public masturbation that were brought against him with regard to this incident were ultimately dismissed, Honeycutt's perception that Hamlet was a threat was erroneous and Honeycutt's actions were therefore unnecessary. (Id. at 15-17.)

Applying the Whitley factors to the facts viewed in the light most favorable to Hamlet, the court concludes that the amount of force used was not constitutionally excessive. Importantly, Hamlet acknowledges that he had an extensive disciplinary history for similar types of infractions. (Compl., ECF No. 1 at 20; see also Record Summary, ECF No. 43-17.) Accordingly, even viewing



the facts that are disputed in the light most favorable to Hamlet, no reasonable jury could find that Honeycutt's perception of Hamlet's behavior was unreasonable. See Whitley, 475 U.S. at 321-322. Further, Hamlet has failed to allege or produce any evidence showing any discernible injury from the use of chemical munitions. The court observes that Hamlet was seen by medical personnel approximately twenty minutes following the incident where he was observed to have no injuries, no shortness of breath, and no expressed physical complaints. (See Smith Aff. ¶ , ECF No. 27-4 at 1; Report on Use of Force, ECF No. 27-4 at 3.) Moreover, Smith avers that Hamlet's medical records "appear to be devoid of any complaint by [Hamlet] that he sustained any injury as a result of the incident with Officer Honeycutt." (Smith Aff. ¶ 4, ECF No. 27-4 at 2.) While Hamlet appears to allege that he has made multiple complaints to the medical department regarding vision problems, dizziness, and headaches, the only evidence supporting such assertions are two requests to staff from January and March 2012 that Hamlet provides as exhibits to his response in opposition.[1] However, these documents are insufficient to establish that these symptoms in any way resulted from the April 21, 2011 incident. Accordingly, the court concludes that no reasonable jury could find that the use of mace was not a good faith effort to restore and maintain prison discipline when faced with a recalcitrant prisoner but rather was used maliciously and sadistically to cause physical harm. See Wilkins, 130 S. Ct. at 1178; see also Bailey, 736 F.2d at 969-70; Williams, 77 F.3d at 763.

---

[1] Several months after the defendants filed their reply in support of their motion for summary judgment, Hamlet filed a letter to which he attached several pages of his medical records. (ECF No. 48.) To the extent Hamlet's filing is construed as a sur-reply, the court observes that the Local Rules make no provision for sur-replies. Further, under Local Civil Rule 7.07 DSC, "[r]eplies to responses are discouraged." However, even considering Hamlet's sur-reply, it does not change the court's analysis of the legal issues and its recommendation to grant summary judgment.



To the extent that Hamlet asserts an Eighth Amendment claim based on his allegation that he was denied a shower for approximately fifteen hours following the deployment of chemical munitions, his claim likewise fails. Courts in this circuit have analyzed such claims as ones asserting excessive force. Williams v. Benjamin, 77 F.3d 756, 764-65 (4th Cir. 1996) (analyzing plaintiff's claim that he was restrained without the opportunity to wash after being maced as an excessive force claim). Specifically, Hamlet alleges that he experienced painful burning from the chemical munitions and that his request for a shower was denied. (Compl., ECF No. 1 at 7.) In response, the defendants have presented affidavit testimony from Defendant Honeycutt that attests that, because this incident "occurred during the night shift, and due to the staffing capacity of officers, there are only certain times allowed for showers in the SMU because of safety and security concerns." (Honeycutt Aff. ¶ 8, ECF No. 27-3 at 2.) Honeycutt further avers that Hamlet had access to a sink in his cell with which to wash himself following the incident. (Id.) As the record unequivocally shows that Hamlet was not denied the opportunity to decontaminate but rather denied a shower for security reasons, the court finds that the defendants are entitled to summary judgment this claim. See Williams, 77 F.3d at 764 n.4 (noting that the fact that prisoners are permitted to wash off mace shortly after its application has been a significant factor in upholding its use) (citing Soto v. Dickey, 744 F.2d 1260, 1266 (7th Cir. 1984)).

Alternatively analyzing Hamlet's claim as one alleging deliberate indifference to a serious medical need, his claim similarly cannot proceed. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (analyzing such a claim as one asserting medical indifference). The Eighth Amendment prohibition against the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII., includes deliberate indifference to serious medical needs of prisoners, Estelle v. Gamble, 429 U.S.



97, 104 (1976). In the medical context, an inmate "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." Iko, 535 F.3d at 241 (quoting Estelle, 429 U.S. at 104).

With regard to the objective prong, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). With regard to the subjective prong, a prison official is deliberately indifferent if he has actual knowledge of and disregards "the risk posed by the serious medical needs of the inmate." Iko, 535 F.3d at 241 (citing Farmer, 511 U.S. at 837). To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Furthermore, not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle, 429 U.S. at 105. To establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

As discussed above, the record unequivocally shows that Honeycutt ensured that Hamlet was seen by medical personnel shortly after the incident with Honeycutt and was observed to have no injuries and that he did not voice any complaints. (See Smith Aff. ¶ , ECF No. 27-4 at 1; Report on Use of Force, ECF No. 27-4 at 3.) Moreover, Smith avers that Hamlet's medical records "appear to be devoid of any complaint by [Hamlet] that he sustained any injury as a result of the incident with Officer Honeycutt." (Smith Aff. ¶ 4, ECF No. 27-4 at 2.) Hamlet has not produced any evidence

to the contrary. Additionally, as observed above, no dispute exists that Hamlet had access to a sink in his cell with which to wash himself following the incident. (Honeycutt Aff. ¶ 8, ECF No. 27-3 at 2).

Finally, to the extent that Hamlet is alleging that the defendants' actions violated or were performed based on a misinterpretation of SCDC policy, § 1983 provides relief from a violation of federal constitutional rights, not from a violation of prison-created policies or procedures. Keeler v. Pea, 782 F. Supp. 42 (D.S.C. 1992). Violations of prison policies alone do not rise to the level of a constitutional deprivation. See id. at 44 (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); cf. Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (recognizing that if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue). As noted above, the otherwise proper use of chemical munitions to compel obedience from a recalcitrant prisoner has been held not to violate the Eighth Amendment. See Bailey, 736 F.2d at 969-70. Accordingly, the defendants are entitled to summary judgment on these claims.

### 4.     Failure to Protect

Hamlet's claims, liberally construed, appear to allege that Defendant Eagleton failed to protect him from the incident with Defendant Honeycutt in that Eagleton did not transfer Hamlet to a different facility prior to the incident. (See Compl, ECF No. 1 at 19-21.) Hamlet alleges that Eagleton "refused to abate the behavior[]al problem of [Hamlet] that was consistent and ongoing", and that due to Hamlet's many prior disciplinary incidents, Eagleton should have transferred Hamlet so that "what occu[r]ed on 4-21-11 wouldn't transpire[] at any moment." (Id. at 19, 21.)



Like Hamlet's allegations discussed above, a failure to protect claim is analyzed under the Eighth Amendment. To satisfy the subjective component, an inmate must show that the prison official's state of mind was "deliberate indifference" to the inmate's health and safety. Farmer, 511 U.S. at 834 (1994). A prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). To succeed under this standard on a failure to protect claim, "[t]he plaintiff . . . must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that the plaintiff complained to prison officials about a *specific* threat to his safety. In other words, the defendants had to know that there was a substantial risk that those who attacked [the plaintiff] would do so, yet failed to take any action." Miller v. Turner, 26 F. App'x 560, 563 (7th Cir. 2001) (emphasis in original and internal citations omitted).

Hamlet's conclusory allegations that essentially allege that he is a frequently recalcitrant prisoner are woefully insufficient to meet this standard and establish that Defendant Eagleton had knowledge of any specific, substantial risk of harm to Hamlet. Therefore, Defendant Eagleton is entitled to summary judgment with regard to this claim.

### 5. Respondeat Superior

Defendants Eagleton and Byars, the Warden of ECI and the Director of SCDC, respectively, are entitled to judgment as a matter of law to the extent Hamlet's Complaint raises claims against them in their supervisory positions over Defendant Honeycutt or other staff at ECI. The doctrine of respondeat superior cannot support liability under § 1983. Monell v. Dep't of Soc. Servs., 436 U.S.



658, 691-94 (1978). The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Mere knowledge is not sufficient to establish personal participation. Id. As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Id. at 677. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely." Id. at 693 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).

**C.     Other Claims**

To the extent Hamlet is attempting to assert any other claims, his Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).



**RECOMMENDATION**

For the above reasons, the court recommends that the defendants' motion for summary judgment be granted. (ECF No. 27.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 25, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).